Case: 1:18-cv-02471 Document #: 1 Filed: 04/06/18 Page 1 of 70 PageID #:1



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

EDWARD A. WEINHAUS,

    Plaintiff,

    v.

NATALIE B. COHEN, STEVEN
COHEN, BARRY CHERNAWSKY,
ADRIENNE CHERNAWSKY

    and

the STATE OF ILLINOIS

    Defendants.

**18-cv-2471**
**Judge Rebecca R. Pallmeyer**
**Magistrate Judge Maria Valdez**

JURY TRIAL DEMANDED

**FILED**

APR −6 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**COMPLAINT**
**(For Damages and Injunctive Relief)**

NOW COMES, EDWARD WEINHAUS ("EDWARD"), Plaintiff, *pro se*, and in
support of his Complaint, respectfully states as follows:

**GENERAL ALLEGATIONS AS TO ALL PARTIES**

**A. PARTIES**

1. EDWARD is the Plaintiff in this matter. EDWARD is a citizen of the United
States, lives in St. Louis, Missouri and works at the University of California Los Angeles.

2. NATALIE B. COHEN ("NATALIE") resides at 1939 Browning Ct, Highland
Park, IL, in Lake County.

3. STEVEN COHEN ("STEVEN") was NATALIE's husband during the time of
the events described herein. STEVEN resides at 1939 Browning Ct., Highland Park, IL,
in Lake County.

4. BARRY CHERNAWSKY ("BARRY") is NATALIE's father and resides at 2025 Hidden Ridge Ln, Highland Park, IL in Lake County.

5. ADRIENNE CHERNAWSKY ("ADRIENNE") Is NATALIE's mother and resides at 2025 Hidden Ridge Ln, Highland Park, IL in Lake County.

6. NATALIE, BARRY, ADRIENNE and STEVEN are hereinafter referred to collectively as "the Defendants."

7. The Domestic Relations Division of Cook County Courts for the State of Illinois ("the STATE COURT") acts on behalf of the State of Illinois and any petitions it accepts, schedules, hears or conducts pre-trial conferences on, and any orders it enters or enforces as alleged herein are State actions for the post-decree Domestic Relations Case 12 D 8800, Calendar 62 ("the Illinois Dissolution Action").

8. There were five children born to the EDWARD and NATALIE as a result of their marriage, to wit: M.W. (born 2002), L.W. (born 2004), So.W. (born 2005), Sa.W. (born 2008), E.W. (born 2011).

## B. RELEVANT COURT ORDERS TO THE PROCEEDINGS

9. On October 2, 2014, the STATE COURT entered an Agreed Joint Custody Judgment ("JCJ"). Attached EXHIBIT A. That the JCJ gave EDWARD flexibility for which weekends he took and additionally gave him the rights to long "Named Weekends", particularly: Martin Luther King Weekend, President's Day Weekend, Spring Break, Memorial Day Weekend, "Summer", Labor Day Weekend, Columbus Day Weekend, Veteran's Day Weekend, Thanksgiving Weekend, and Winter Break.

10. On April 15, 2015 the STATE COURT entered a bifurcated Judgment for Dissolution of Marriage. Attached EXHIBIT B.

**11.** On April 26, 2016, the STATE COURT entered an order modifying the JCJ ("Modified JCJ"). Attached EXHIBIT C. That the Modified JCJ kept EDWARD's Named Weekends as EDWARD's visitation time with the children.

### C. JURISDICTION, VENUE, AND JURY TRIAL

12. According to statute, 28 USC § 2283 authorizes federal courts to enjoin and stay proceedings in state courts for Acts authorized by Congress, including 42 U.S.C. §§ 1983 and 1985(3).

13. According to statute, 42 U.S.C. §§ 1983 and 1985(3) are federal causes of action and statutes authorized by Congress, empowering this Court to grant stays and other injunctive relief against the courts of the State of Illinois.

14. EDWARD resides in Missouri, that the Defendants and the State of Illinois all permanently reside in Illinois.

15. The matter in controversy in this action is for an amount greater than the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

16. This Court has jurisdiction over the subject matter of this action because it is between citizens of different states and the matter in controversy is greater than $75,000 pursuant to 28 U.S.C. § 1332.

17. This Court has jurisdiction over the subject matter of this action because it involves matters of federal law pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over any state laws via supplemental jurisdiction under 28 U.S.C. § 1367.

18. This Court has in personam jurisdiction over the Defendants and the State of Illinois because the Defendants all reside in the district and the district encompasses part of the State of Illinois.

19.     This Court is an appropriate venue as the events herein and the

Defendants principally occurred within the district and live within the district pursuant to

28 U.S.C. § 1391.

    20.     EDWARD requests a trial by jury.

## II. THE RELEVANT LAW
## A. BACKGROUND OF CIVIL RIGHTS STATUTES 42 U.S.C. §§ 1983, 1985(3)
    21.     The federal statute 42 U.S.C. § 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a judicial
> officer for an act or omission taken in such officer's judicial capacity,
> injunctive relief shall not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable. For the purposes of this
> section, any Act of Congress applicable exclusively to the District of
> Columbia shall be considered to be a statute of the District of Columbia.

    22.     The elements for a claim for deprivation of rights under 42 USCS § 1983,

require a plaintiff show that (1) conduct complained of was committed by person acting

under color of law; (2) defendants' conduct in fact deprived them of rights, privileges or

immunities secured by Constitution or laws of United States; (3) defendants' conduct

caused deprivation of federal constitutional rights; and (4) defendants' conduct must

have been intentional, grossly negligent, or must have amounted to reckless or callous

indifference to constitutional rights of others. See Neris v Vivoni, 249 F.Supp. 2d 146,

149 (D.P.R. 2003).

    23.     The federal statute 42 U.S.C. § 1985(3) reads as follows:

> **(3) Depriving persons of rights or privileges**
> If two or more persons in any State or Territory conspire or go in disguise
> on the highway or on the premises of another, for the purpose of

depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

24. The test for a § 1985(3) action has four elements:

a. a conspiracy;
b. for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and
c. an act in furtherance of the conspiracy;
d. whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983).

## B. BACKGROUND OF THE 14th AMENDMENT

25. The 14th Amendment to the Constitution of the United States reads in

relevant part in Section 1:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

26.     That Article IV § 2 Clause 1 of the Constitution of the United States reads:

"The Citizens of each State shall be entitled to all Privileges and Immunities of

Citizens in the several States."

27.     That Privileges and Immunities include the "Right to Travel" as

fundamental a right defined below.

28.     The Privileges and Immunities protections are afforded to citizens of a

state other than Illinois from Illinois state action  is fundamental to the Constitution. To

wit:

> [The Privileges and Immunities clause's] sole purpose was to declare to the
> several States, that whatever those rights, as you grant or establish them to your
> own citizens, or as you limit or qualify, or impose restrictions on their exercise, the
> same, neither more nor less, shall be the measure of the rights of citizens of other
> States within your jurisdiction.

*Slaughter-House Cases*, 83 U.S. 36, 77 (1872).

**29.**     That the right to Due Process and Equal Protection of the laws include the

State applying its own Constitutional and statutory due process rights to citizens of other

states, including the right to represent oneself before the STATE COURT and access to

the STATE COURT.

## C. BACKGROUND OF THE RIGHT TO TRAVEL

30.     The "Right to Travel" is a fundamental right of being a citizen of the United

States as defined in *United States v. Guest*:

> The constitutional right to travel from one State to another, and necessarily to
> use the highways and other instrumentalities of interstate commerce in doing so,
> occupies a position fundamental to the concept of our Federal Union. It is a right
> that has been firmly established and repeatedly recognized. In *Crandall v.
> Nevada*, 6 Wall. 35, invalidating a Nevada tax on every person leaving the State
> by common carrier, the Court took as its guide the statement of Chief Justice
> Taney in the *Passenger Cases*, 7 How. 283, 492:
>
>> "For all the great purposes for which the Federal government was formed,
>> we are one people, with one common country. We are all citizens of the

> United States; and, as members of the same community, must have the
> right to pass and repass through every part of it without interruption, as
> freely as in our own States." See 6 Wall., at 48-49.

*United States v. Guest*, 383 U.S. 745, 757-58 (1966).

31.     The Right to Travel is firmly established *as a private right of action* by the

United States Supreme Court in *Griffin v. Breckenridge*:

> "[T]he right of interstate travel is constitutionally protected, does not necessarily
> rest on the Fourteenth Amendment, and is assertable against private as well as
> governmental interference." *Shapiro v. Thompson*, 394 U.S. 618, 629-31; *Id.*, at
> 642-44 (concurring opinion); *United States v. Guest*, 383 U.S. 745, 757-760 and
> n. 17;*Twining v. New Jersey*, 211 U.S. 78, 97; *Slaughter-House Cases*, 16 Wall.
> 36, 79-80; *Crandall v. Nevada*, 6 Wall. 35, 44, 48-49; *Passenger Cases*, 7 How.
> 283, 492 (Taney, C. J., dissenting).

*Griffin v. Breckenridge*, 403 U.S. 88, 106 (1971)

32.     That the Court has explained that the Right to Travel has three variations:

> The "Right to Travel" discussed in our cases embraces at least three different
> components. It protects the right of a citizen of one State to enter and to leave
> another State, the right to be treated as a welcome visitor rather than an
> unfriendly alien when temporarily present in the second State, and, for those
> travelers who elect to become permanent residents, the right to be treated like
> other citizens of that State. *Saenz v. Roe*, 526 U.S. 489, 500 (1999)

33.     That EDWARD is due a constitutional right to be treated as a "welcome

visitor" in the state of Illinois as expounded by the Court in *Saenz v. Roe*:

> The second component of the Right to Travel is, however, expressly protected by
> the text of the Constitution. The first sentence of Article IV, § 2, provides:

>> "The Citizens of each State shall be entitled to all Privileges and
>> Immunities of Citizens in the several States."

> Thus, by virtue of a person's state citizenship, a citizen of one State who travels
> in other States, intending to return home at the end of his journey, is entitled to
> enjoy the "Privileges and Immunities of Citizens in the several States" that he
> visits. This provision removes "from the citizens of each State the disabilities of
> alienage in the other States." *Paul v. Virginia*, 8 Wall. 168, 180, 19 L.Ed. 357
> (1868) ("[W]ithout some provision ... removing from the citizens of each State the
> disabilities of alienage in the other States, and giving them equality of privilege

with citizens of those States, the Republic would have constituted little more than a league of States; it would not have constituted the Union which now exists").

It provides important protections for nonresidents who enter a State whether to obtain employment, *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), to procure medical services, *Doe v. Bolton*, 410 U.S. 179, 200, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), or even to engage in commercial shrimp fishing, *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948).

Those protections are not "absolute," but the Clause "does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Id.*, at 396, 68 S.Ct. 1156. There may be a substantial reason for requiring the nonresident to pay more than the resident for a hunting license, see *Baldwin v. Fish and Game Comm'n of Mont.*, 436 U.S. 371, 390–391, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), or to enroll in the state university. see *Vlandis v. Kline*, 412 U.S. 441, 445, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973)…"

*Saenz v. Roe*, 526 U.S. 489, 501-02 (1999).

34.     EDWARD's right to rear the Weinhaus children is a fundamental right, not

a bargaining chip to be traded for access to use highways and roadways, parks and

instrumentalities of commerce of Illinois. According to the Court in *Stanley v. Illinois*:

The rights to conceive and to raise one's children have been deemed "essential," *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), "basic civil rights of man," *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942), and "rights far more precious . . . than property rights," *May v. Anderson*, 345 U.S. 528, 533 (1953).

*Stanley v. Ill.*, 405 U.S. 645, 651 (1972).

35.     Requiring a parent to both enter to pick up one's children and then leave a

state to "raise one's children" without any finding of best interests of any child or

children, or any other substantial reason is a restriction on the Right to Travel.

36.     Requiring a parent to leave a state to "raise one's children" in any event

improperly requires a parent to choose between one "essential" right versus another

"fundamental right" and is a restriction on the Right to Travel.

## D. ILLINOIS RIGHT TO DUE PROCESS AND SELF-REPRESENTATION

37.     The State of Illinois boasts a state constitutional right for its own citizens to represent themselves in matters of public concern. See Illinois Constitution Preamble, and Art. I §§ 5,12. The State of Illinois statutes encourages the use of an attorney in family law as an option, not an obligation, and promotes attorney consultation. See 750 ILCS 5/457 ("It is in the best interests of each of the parties to consult attorneys regarding the dissolution of their marriage, and that the services of attorneys may be obtained."). Illinois' judges in the Domestic Relations divisions advertise self-representation access across the state. E.g. Judges of 19th Judicial Circuit et. al., "Guide for Family Law Cases" October 2016, https://19thcircuitcourt.state.il.us/DocumentCenter/View/101 - last visited March 20, 2018 ("The Constitution of the United States and the State of Illinois not only guarantee litigants the right to retain legal counsel to represent them, but also affords to each and every citizen the right of self-representation."). Cook County instructs self-represented family law adherents on the process for representing oneself on its own website. See "Representing Yourself Pro Se in a Domestic Relations Case" page http://www.cookcountycourt.org/ABOUTTHECOURT/CountyDepartment/DomesticRelati onsDivision/ForPeopleWithoutLawyers/RepresentingYourself.aspx - last visited March 20, 2018.

38.     The State of Illinois has a statutory definition regarding the "Unauthorized Practice of Law" contained in 705 ILCS 205/1. That the Illinois Professional Rules of Conduct Rule 5.5 defines the Unauthorized Practice of Law by the Illinois Supreme Court.  Neither of the two definitions apply to a pro se litigant exercising his or her

constitutional right to self-representation, nor does it in any way limit the relationship between a licensed and authorized attorney and a client.

## III. STATEMENT OF FACTS

39. EDWARD filed an appearance to appear pro se in the Illinois Dissolution Action on April 16, 2014 EDWARD then presented the pro-se appearance on January 9, 2015 post-trial and again on November 4, 2015 post-decree with the assistance of EDWARD's former counsel.

40. The JCJ gave EDWARD, who has lived in the state of Missouri for 11 of the past 12 years, visitation rights with the Weinhaus children and joint custody. The JCJ does not restrict EDWARD's Right to Travel.

41. The JCJ requires all pickups and dropoffs to be in the state of Illinois requiring EDWARD's travel to the state of Illinois to see the children, in their state of primary residence.

42. The parties agreed in JCJ to allow NATALIE to be the primary residential parent of the children. From her position as the primary residential parent "in possession" of the children, NATALIE and the other Defendants unlawfully withheld EDWARD's visitation and custody rights from him unless he agreed that after he took custody of the children he would immediately leave the state of Illinois exclusively using its roads, highways, parks and instrumentalities of commerce for the sole purpose of leaving, and not reenter the State using its roads, highways, parks and instrumentalities of commerce during his visitation period other than to return the children.

43. The STATE COURT's findings in February 2015 demonstrate that it is not in the STATE COURT's authority to create any protective order surrounding EDWARD's rights to be in public spaces in Illinois:

> "[This STATE COURT is] required to make findings…This is not even close to an order of protection...It's obvious from the testimony of everyone involved that the kids want to see their [dad], that you [NATALIE] don't like the situation ...and the fact that you have 5 kids with someone you don't want to talk to…" [Court Transcript, p. 35-6].

44. Again the STATE COURT struck protective order language from its handwritten court order entered in October 2015 after NATALE's Counsel wrote in restraining order language.

45. On October 30, 2015, NATALIE withheld the children because EDWARD considered using the roads, highways, parks and instrumentalities of commerce of Illinois during his visitation for something other than leaving the state of Illinois, namely to spend time with the children, on his weekend, in the state of Illinois ("Halloween Weekend 2015"). Thereafter, NATALIE continued to do so, with or without any order of the STATE COURT.

46. EDWARD had given NATALIE ample and required notice of visitation for Halloween Weekend 2015, a weekend then assigned to EDWARD by the rules of the JCJ, and an itinerary of traveling to St. Louis multiple times ahead of the weekend. However, because EDWARD mentioned the possibility that he may use the roads, highways, parks and instrumentalities of commerce of the state of Illinois with the children, the Defendants refused to give EDWARD custody of the children during EDWARD's scheduled weekend stating that EDWARD did not have the right to weekend visitation in Illinois.

47. Upon information and belief, on or about October 28, 2015, the Children's Representative encouraged NATALIE and STEVEN to allow EDWARD to have the children in Illinois for the weekend because it was in the children's best interests and because he believed the JCJ required it. He further encouraged NATALIE and STEVEN not to discriminate against EDWARD for being an out-of-state parent.

48. NATALIE, BARRY, ADRIENNE and STEVEN conspired in a plan to restrict EDWARD and the children's Right to Travel by withholding his visitation because they suspected that he intended to use the roads, highways, parks and instrumentalities of commerce of the state of Illinois for a purpose other than leaving the state of Illinois with the children.

49. NATALIE gave her reason for withholding visitation from EDWARD for visitation within the state of Illnois' borders on EDWARD's weekend in an email:

> "Properly noticed visitation again states clearly that it is outside the state of Illinois which is where you affirmatively state you reside and what our whole judgment is based on. There are terms for visitation in Chicago as an **out of town parent**." [emphasis added]

50. The Defendants have refused overnight visitation for EDWARD and the children on EDWARD's weekends within the borders state of Illinois from Halloween Weekend 2015 forward primarily for the reason of discrimination against EDWARD as a resident of another state. The Defendants' limitations on EDWARD's visitation do not restrict EDWARD from a specific locale, but being within the entire state of Illnois' borders during his visitation with the children.

51. When NATALIE withheld the children from EDWARD on October 30, 2015, L.W. ran away to EDWARD to spend Halloween Weekend 2015 with EDWARD.

That the Defendants withheld the rest of the children from EDWARD's custody after EDWARD again requested them during Halloween Weekend 2015 because EDWARD is an "out of town" parent in the state of Illinois.

52.    NATALIE called the Highland Park Police Department on EDWARD after EDWARD informed NATALIE that he had L.W on October 30, 2015 and gave NATALIE L.W. and EDWARD's location at a hotel within the state of Illinois.

53.    L.W. spoke alone to Children's Representative Levin on October 31, 2015 in Northbrook, IL and reiterated that L.W. wanted to be with EDWARD and not go back to NATALIE for the weekend.

54.    Between October 30, 2015 and November 1, 2015, NATALIE assigned caretaking of one or more of the children to STEVEN, BARRY and ADRIENNE to keep them from EDWARD.

55.    On October 31 during Halloween Weekend 2015, EDWARD and L.W. saw BARRY, ADRIENNE, Sa.W. and E.W. at Northbrook Court Mall in Northbrook, Illinois. That EDWARD approached the youngest Weinhaus children to say "Hello" greet them.

56.    BARRY, at (upon information and belief) NATALIE and STEVEN's behest, immediately removed the children from EDWARD's possible greeting despite it being EDWARD's designated weekend.

57.    ADRIENNE, at (upon information and belief) NATALIE and STEVEN's behest, began yelling at EDWARD and assaulted him before BARRY and ADRIENNE absconded with the children, never allowing the children within 10 feet of EDWARD to greet him.

That NATALIE forced L.W. to write a "prisoner letter" upon returning to her home describing his efforts to spend time with EDWARD on Halloween Weekend 2015. (Attached as EXHIBIT D).

58. On April 11th and 12th, 2016 the STATE COURT conducted a pre-trial conference with EDWARD, EDWARD's counsel, NATALIE and NATALIE's counsel.

59. On April 12th, 2016 the STATE COURT opined that it was to make a judgment limiting EDWARD's Right to Travel without having had received testimony and without a hearing, nor a finding of the best interests of the children or any due process. To wit, the STATE COURT stated that it would remove EDWARD's Named Weekends in the JCJ and replace them with impossible, more limited and expensive visitation including visitation impossible for EDWARD to conduct and beyond EDWARD's financial means unless EDWARD accepted a restriction to EDWARD's Right to Travel.

60. EDWARD first became aware of the nature of the deprivation of his and the children's rights from the events of Halloween 2015 during the STATE COURT's explanation on April 12, 2016 described in Paragraph 62 below.

61. The STATE COURT's threat of removing visitation rights without a hearing, witnesses, or evidence put EDWARD in a position of duress and compelled him to otherwise accede to the STATE COURT's unconstitutional restriction to his Right to Travel. The STATE COURT required that once EDWARD retrieves the children on his weekend in Illinois he is then limited to visitation with them to outside the State of Illinois, forcing EDWARD and the children to travel outside the state's borders, hereafter "the Travel Mandate."

62. The STATE COURT's reasoning for requiring the Travel Mandate be included in the Modified JCJ which it stated to EDWARD in court on April 12, 2016:

"If the reason that you have to exercise the JCJ weekends is because you have to travel [as an out-of-state resident], then the only way I can justify it is by making sure you have to travel." [emphasis added]

63. The STATE COURT then entered an order, the Modified JCJ with Travel Mandate on April 26, 2016, to which EDWARD was compelled to accede under duress, the threat of lack of due process and which would otherwise would have removed the Named Weekends in the JCJ upon which EDWARD relied and needed to parent the children appropriately.

64. Per the Modified JCJ with Travel Mandate, EDWARD may not use the roads, highways, parks, instrumentalities of commerce, the hospitality and the other enjoyments of civil liberties in Illinois once the children are in his possession and care other than to leave the state of Illinois. The Modified JCJ with Travel Mandate, when enforced, requires EDWARD to trade one fundamental right for another - travel or children – and, on its face, is a violation of the Privileges and Immunities Clause of the of the Constitution of the United States of America.

65. The Modified JCJ with Travel Mandate, like the JCJ, requires that all of EDWARD's visitation originate in and terminate in the in the state of Illinois ("Illinois Origination and Termination Requirement"). The Illinois Origination and Termination Requirement coupled with the Travel Mandate severely limits EDWARD's Right to Travel in exchange for the essential right of rearing his children. Put another way, EDWARD's freedom to travel in Illinois, after picking the children up for his visitation and before dropping them off for one of his Named Weekends, which must occur in Illinois

by definition, is restricted to the uses of transporting the children out of Illinois by the Travel Mandate. EDWARD may not use the roads, highways, parks or instrumentalities of commerce for Illinois on his weekends other than to leave for the weekend or to return from it. Additionally, the Travel Mandate operates to remove the children from EDWARD's custody during his Named Weekend lest EDWARD be in contempt of the STATE COURT. In effect, the Modified JCJ with Travel Mandate allows EDWARD to leave Illinois and take the children to Missouri, California, Mexico, Israel or even Pyongyang, North Korea without intervention of the Court, but contempt should he and the children stay in Illinois.

66. The Modified JCJ included the Travel Mandate for nearly all of EDWARD's weekend time, including Named Weekends: Martin Luther King Day, President's Day, Spring Break, Passover, Memorial Day, Father's Day, Summer, Labor Day, Jewish holidays, Columbus Day, Veteran's Day, Thanksgiving and Winter Break.

67. The Modified JCJ with Travel Mandate, and specifically the Travel Mandate restricts EDWARD and the children's Right to Travel, to wit:

  a. Upon information and belief, no state other than Illinois imposes upon a non-resident a requirement that he or she leave the entire state for the purposes of exercising the same custodial and parenting rights of Illinois residents or otherwise forfeit those rights.
  b. Illinois prescribes no requirement on any of its own citizens to travel out of state by mandate. No Illinois resident who has children residing in Illinois is required to leave the state of Illinois to exercise visitation and custody of his or her own children.
  c. The Travel Mandate is completely anathema to public policy driving commerce and its own residents away from the State of Illinois by mandate;
  d. The Travel Mandate itself is completely anathema to public policy for a state which advocates for parents to be involved in the lives of children by placing an undue and unconstitutional burden on the parent-child relationship;
  e. The Court gave no finding of "best interests of the children" nor made any inquiry with testimony, evidence or witnesses into the best interests of the children before requiring the Travel Mandate. Remarkably, nowhere in the

Modified JCJ with Travel Mandate is there even a mention of the best interests of the Weinhaus children in stark contrast to the JCJ, not even in the preamble;

f. The reason the STATE COURT gave for the Order was crystal clear in its own reasoning: "If the reason that you have to exercise the JCJ weekends is because you have to travel [as an out-of-state resident], then the only way I can justify it is by making sure you have to travel." [emphasis added]" showing deep animus for an out-of-state parent for the fact of living out-of-state from Illinois. [emphasis added]

68. The Defendants continued to restrict EDWARD's Right to Travel by restricting visitation on EDWARD's Named Weekends unless he complied with leaving the state of Illinois both before and after the Modified JCJ with Travel Mandate, as private citizens and under the color of law.

69. The Defendants took action in concert to deny EDWARD his Right to Travel as private citizens and under the color of law.

70. Once the Modified JCJ with the Travel Mandate was entered, EDWARD complied with the Modified JCJ and the Travel Mandate under enforcement by the Defendants and under threat of contempt by the STATE COURT.

71. The Travel Mandate became unworkable and a large burden for EDWARD and the five children, including expensive, extra, and unnecessary travel. EDWARD had reasonably agreed to begin and end visitation with the children in Illinois on his Named Weekends; the Travel Mandate required that EDWARD then travel with six people out of the state of Illinois during his Named Weekend, requiring great expense.

72. The Travel Mandate forced travel upon EDWARD and the children, even when it is not in the children's best interests, requiring EDWARD to forfeit custody for their best interests, instead of caring for the children in Illinois on his Named Weekends.

73.    EDWARD began requesting to NATALIE to no longer restrict his Right to Travel by allowing him to use the roads, highways, parks and instrumentalities of commerce of Illinois on his Named Weekends for a purpose other than leaving the boundaries of the state of Illinois.

74.    The Defendants in concert with NATALIE rejected EDWARD's requests; the Defendants  instead acted in concert to place the children in NATALIE's care, STEVEN's care, BARRY's care and ADRIENNE's care in order to deprive EDWARD of his custody and visitation time with the children while in Illinois on his Named Weekends as a limitation and consequence of his using the roads, highwas, parks, hospitality and instrumentalities of commerce for something other than leaving the state of Illinois with the Weinhaus children.

75.    In so doing, NATALIE and the Defendants are only allowing EDWARD and the children to spend time together if EDWARD leaves the state of Illinois with the children, thereby restricting his Right to Travel.

76.    In so doing, NATALIE and the Defendants are acting to enforce the STATE COURT's Modified JCJ with Travel Mandate under color of law and thereby restricting his Right to Travel.

77.    The specific Named Weekends which the Defendants illegaly withheld the children from EDWARD because he would have stayed in instead of leaving Illinois with the children include:

a. Columbus Day Weekend 2016

b. Veteran's Day Weekend 2016

c. Martin Luther King Day Weekend 2017

d. President's Day Weekend 2017

e. Summer period August 19-20, 2017

f. Labor Day Weekend 2017

g. Columbus Day Weekend 2017

h. President's Day Weekend 2018

78. In January 2017 or thereabouts, the Defendants scheduled Sa.W.'s penultimate dance recital on Memorial Day Weekend 2017 in Illinois, during EDWARD's Named Weekend.

79. On February 24, 2017 EDWARD sought to modify the Modified JCJ with Travel Mandate asking the STATE COURT to remove the Travel Mandate about which the STATE COURT has still not conducted an evidentiary hearing.

80. EDWARD, seeking to avoid court costs for all parties, expenses and damage to the children, requested of NATALIE (and through her the other Defendants) to lift both her private restriction of EDWARD's ability to have the children inside Illinois as opposed to traveling outside of Illinois and the Defendants' enforcement of the STATE COURT's Travel Mandate. It was to have been a "win-win", allowing both sets of parents to watch Sa.W. participate in the once-in-a-year event, as was doubly encouraged in the JCJ; in the alternative, EDWARD would have been forced to travel out-of-state with Sa.W. and all would have missed the event.

81. NATALIE and the other Defendants rejected EDWARD's right to custody of the children in Illinois on his Named Weekend of Memorial Day should he so choose in their best interests to use the Illinois roads, highways, parks and instrumentalities of commerce for a purpose other than leaving the state of Illinois.

82. The Defendants refused to allow EDWARD to have the children in Illinois on his Named Weekend of Memorial Day 2017, and refused lift their enforcement of the Travel Mandate and the restriction of EDWARD's Right to Travel.

83. To assist in his ability to exercise his Right to Travel on March 23, 2017, EDWARD filed an Emergency Motion to Modify to remove the Travel Mandate from the Modified JCJ to generally allow EDWARD to have custody of the children in Illinois on his Named Weekends.

84. On or about April 27, 2017, the STATE COURT "admonished EDWARD's counsel" for allowing EDWARD to act in furtherance of his own case, "as it could constitute aiding the unlicensed practice of law, a breach of the Professional Rules of Conduct." That this statement was sworn by NATALIE via her counsel and is not in dispute by either of the parties to the Illinois Dissolution Action. Attached as EXHIBIT E (pages 1-2).

85. EDWARD had an appearance on file about which the STATE COURT was aware and therefore has a constitutional right to represent himself under Illinois' Constitution as well as to seek legal counsel. That as EDWARD was representing himself and nobody else, it was impossible for EDWARD's counsel (former) to have been admonished for the stipulated reason - ie "aiding in the unlicensed practice of law." "Aiding in the unlicensed practice of law" by definition requires representing a client other than oneself or holding oneself out to do so, and is not implied when representing oneself.

86. The STATE COURT's admonishment of EDWARD's counsel (former) for merely helping EDWARD is driven by its abovementioned animus towards EDWARD as an "out-of-state" resident.

87. EDWARD's counsel (former) is an officer of the STATE COURT and appears often before the STATE COURT, even serving as the STATE COURT's appointed Children's Representative and Guardian Ad Litem, including on behalf of the Honorable Regina A. Scannicchio, who entered the Modified JCJ with Travel Mandate and to whom both NATALIE and EDWARD attribute the statements in Paragraph 84 above.

88. The STATE COURT's admonishment of EDWARD's Counsel for assisting EDWARD interfered with EDWARD's relationship with Counsel and interfered with EDWARD's right to self-representation.

89. Subsequent to the STATE COURT's admonishment: 1) EDWARD's counsel (former) significantly overbilled EDWARD; 2) EDWARD's senior counsel (former) distanced herself from the management of EDWARD's case; 3) EDWARD's counsel (former) refused to serve EDWARD or the case in a professional manner; 4) EDWARD's counsel (former) refused to serve EDWARD's interests as an advocate for fear of reprisal from the STATE COURT in its various dealings.

90. On May 23, 2017, at a hearing before the STATE COURT, the STATE COURT refused to remove the Travel Mandate and dismissed EDWARD's emergency motion of March 23, 2017. The STATE COURT did not conduct a hearing with a record of testimony or of its proceedings and did not have a Court Reporter report the proceedings, ensuring there was no significant record from which to appeal.

91.     Instead, the STATE COURT, on its own motion, suspended the Travel Mandate for one, and only one, Named Weekend (Memorial Day Weekend 2017), citing the children's best interests.

92.     The STATE COURT entered an order stating that EDWARD could use the roads, highways, parks and instrumentalities of commerce of Illinois only for Memorial Day Weekend for his custody and  visitation with the children: "This order shall be without prejudice or precedence to any other future Motions to Modify Parenting Time and is predicated **solely** upon the STATE COURT's finding related to the best interests of the minor children at the present time."

93.     EDWARD's counsel (former) would not, in contravention of their agreed representation agreement, assist EDWARD in appealing  the order of May 26, 2017 based on the STATE COURT's improper admonishment of April 27, 2017 for fear of loss of her own business relationship with the STATE COURT.

94.     The STATE COURT, which is responsible for upholding the Constitution of the United States, was first made aware in open court by EDWARD's counsel of the unconstitutional restriction of EDWARD's Right to Travel at what was supposed to be a hearing scheduled July 7, 2017. The STATE COURT refused to conduct the schedule hearing once EDWARD's counsel (former) mentioned constitutional limits that would have created a record from which EDWARD could appeal.

95.     The STATE COURT refused to remove the Travel Mandate and denied EDWARD a hearing on the matter on July 7, 2017.

96.     NATALIE scheduled EDWARD's Summer custody period (July 20 to August 20) in 2017 to overlap with M.W.'s football schedule in Illinois. EDWARD agreed to send M.W. to Illinois for football during EDWARD's Named Weekend Summer.

97.     The Defendants rejected allowing M.W. and EDWARD to spend time together in Illinois during EDWARD's Summer custody period, despite M.W.'s objections as a restriction to EDWARD's Right to Travel.

98.     The Defendants would not allow M.W. to return to EDWARD out of Illinois during EDWARD's Summer custody period on days M.W. did not have football practice.

99.     The Defendants forced M.W. to leave EDWARD on August 19, 2017, during EDWARD's Summer custody period, because M.W. and EDWARD were using the roads, highways, parks and instrumentalities of commerce of Illinois in contravention of the Travel Mandate.

100.    For Edward's Named Weekend Labor Day Weekend 2017, the Defendants refused to allow L.W. to see EDWARD, over and above the objection of L.W. citing the Travel Mandate. To wit:

   a. L.W. wrote: "Me and Dad have come to a very mature agreement which includes me staying in Mom's custody but on Saturday mom drops me off at DQ nine in the morning and picks me up at DQ at nine at night. after (sic) that I'm clear and my time with dad is over. Thanks! [L.W.]"
   b. NATALIE wrote in an email response to EDWARD: "Being in Chicago goes against our order[.] you are not to be making deals with the children that violates our order...."

101.    For EDWARD's Named Weekend Labor Day Weekend 2017 for which EDWARD was required and planned to take L.W., EDWARD was unable to conduct his weekend plans without L.W. and remained in Illinois awaiting the Defendants to deliver L.W. The Defendants refused to deliver L.W. to EDWARD, instead privately enforcing

the restriction to EDWARD's Right to Travel by withholding a child duly noticed for EDWARD's Named Weekend and by acting under color of law by additionally enforcing the Travel Mandate.

102. EDWARD, while awaiting L.W. from the Defendants, attended M.W.'s football game in Illinois. NATALIE objected to EDWARD being at M.W.'s game and complained that EDWARD had "visitation in the state of Illinois."

103. Upon learning that EDWARD had stayed in Illinois for use of the roads, highways, parks, hospitality and instrumentalities of commerce for his essential right of rearing the children, the Defendants removed M.W. from EDWARD's parents' possession in Illinois so that M.W. and EDWARD could not spend time together in Illinois while EDWARD awaited receiving L.W.

104. The hearing on the Motion to Modify (to remove the Travel Mandate) filed in February 2017 (and previously scheduled to be heard on July 7, 2017) was re-scheduled for October 16, 2017 and October 17, 2017. Again, EDWARD's counsel (former) raised the Constitutional issue of a Right to Travel. Again, the STATE COURT refused to conduct a hearing, heard no witnesses and no evidence over the course of the two-day scheduled hearing, to avoid creating a record from which EDWARD could appeal. Upon information and belief, the STATE COURT threatened EDWARD via his counsel (former) to impose new unconstitutional restrictions on his Right to Travel in exchange for removing the Travel Mandate, and would otherwise, put other restrictions on EDWARD's visitation with the children without any hearing, evidence, testimony or findings in the children's best interests.

105.    The denied EDWARD the scheduled hearing on the Motion to Modify on both October 16, 2017 and October 17, 2017. That the STATE COURT has rescheduled the February 24, 2017 Motion to Modify to a hearing in May 2018, where again, the STATE COURT has intimated it intends to take action without creating a record from which EDWARD can appeal.

106.    EDWARD had agreed to abide the Travel Mandate with M.W. for EDWARD's named President's Day Weekend 2018 and offered caretakers for the other children as allowed by the Modified JCJ with Travel Mandate.

107.    The Defendants refused to deliver any of the children to EDWARD during said weekend and acted in concert to restrict EDWARD's Right to Travel.

108.    EDWARD stayed in Illinois to attend the Weinhaus children's games (as doubly ordered he be encouraged to so by the JCJ) and to offer to assist the Defendants on his own Named Weekend while the children were being withheld.

109.    On Saturday February 17, 2018, EDWARD attended L.W.'s basketball game at the Highland Park Rec Center during EDWARD's Named Weekend. The Defendants sent STEVEN to the game without an automobile to prevent L.W. from leaving or spending time with EDWARD on EDWARD's Named Weekend and restricted EDWARD's Right to Travel, simply because EDWARD is an out-of-state parent.

110.    STEVEN, as an agent for the Defendants, in fact stayed with EDWARD and L.W. after the game for a full 55 minutes, watching guard to ensure that EDWARD did not use the roads, highways, parks and instrumentalities of commerce of Illinois for custody and rearing of L.W on EDWARD's Named Weekend.

111. On Sunday February 18, 2018, STEVEN and NATALIE on behalf of the Defendants removed L.W. from EDWARD and L.W.'s team activity at Potbelly's on EDWARD's Named Weekend in violation of the Modified JCJ and JCJ to prevent EDWARD from using the roads, highways, parks and instrumentalities of commerce of Illinois in rearing the children on EDWARD's Named Weekend.

112. On Sunday February 18, 2018, NATALIE and STEVEN removed Sa.W., E.W. and L.W. from EDWARD's possession after L.W.'s basketball game on EDWARD's Named Weekend, to prevent EDWARD from using the roads, highways, parks and instrumentalities of commerce of Illinois in rearing the children on EDWARD's Named Weekend.

## COUNT I: 42 U.S.C § 1983 AGAINST THE STATE OF ILLINOIS FOR INTERFERING WITH EDWARD'S RIGHT TO TRAVEL

Comes now Plaintiff, EDWARD, and for Count I of his claim for relief against the defendants herein, allege and state as follows:

113. EDWARD restates and re-alleges each of the allegations herein in Paragraphs 1-112.

114. The STATE COURT acted under color of law, on behalf of the State of Illinois.

115. The Modified JCJ with Travel Mandate restricts EDWARD's Right to Travel.

116. The STATE COURT's threat to modify the JCJ to the detriment of EDWARD's ability to rear the children, without due process, unless EDWARD accepted the Travel Mandate is an unconstitutional restriction on EDWARD's Right to Travel .

117.    The STATE COURT restricted EDWARD's Right to Travel by compelling and ordering the Modified JCJ with Travel Mandate.

118.    The STATE COURT's refusal to lift the Travel Mandate without any established finding of a substantial reason for its existence besides animus to a citizen of another state has restricted EDWARD's Right to Travel.

119.    EDWARD is compelled to follow the Modified JCJ with Travel Mandate as it is a standing order of the STATE COURT and is without redress as the STATE COURT has interfered with EDWARD's ability to self-represent, work with counsel, or offer due process.

120.    That the STATE COURT's conduct has caused a deprivation of EDWARD's Right to Travel.

121.    The STATE COURT acted with animus toward EDWARD as being from "out-of-state" and that the STATE COURT intentionally deprived and is still intentionally depriving EDWARD of his Right to Travel.

122.    EDWARD, the children and the relationship between them suffered as a result of the STATE COURT's actions, causing EDWARD emotional and mental damage, as well as pain and suffering.

123.    EDWARD incurred expenses and legal fees in attempting to assert his constitutional Rights.

124.    EDWARD incurred travel expenses for the exchanging of his Right to Travel simply to be with the children.

125.    EDWARD incurred travel expenses to Illinois when his right to the children were withheld due to the STATE COURTs' restriction of his use of the roadways, highways, parks and streams of commerce of Illinois.

**WHEREFORE**, the Plaintiff, EDWARD WEINHAUS, respectfully requests this Court grant the following relief:

A. Enter judgment against the State of Illinois finding the State of Illinois has violated EDWARD's Right to Travel;

B. Enter judgment against the State of Illinois, finding the State of Illinois violated EDWARD's civil rights;

C. Enter judgment against the State of Illinois enjoining the State of Illinois from enforcing the Travel Mandate;

D. Enter judgment against the State of Illinois ordering the State of Illinois to remove the Travel Mandate and leaving the Modified JCJ otherwise unchanged;

E. Enter judgment against the State of Illinois, in an amount to compensate EDWARD for damages;

F. Enter judgment against the State of Illinois, in an amount to compensate EDWARD for travel expenses;

G. Enter judgment against the State of Illinois, in an amount to compensate EDWARD for the cost of this action;

H. Enter judgment against the State of Illinois for punitive damages; and

I. Enter judgment against the State of Illinois for other such and further relief as is deemed equitable and just.

## COUNT II: 42 U.S.C § 1983 AGAINST THE STATE OF ILLINOIS FOR INTERFERING WITH EDWARD'S RIGHT TO DUE PROCESS

Comes now Plaintiff, EDWARD, and for Count II of his claim for relief against the defendants herein, allege and state as follows:

126.  EDWARD restates and re-alleges each of the allegations herein in Paragraphs 1-125.

127.  The STATE COURT acting on behalf of the State of Illinois interfered with EDWARD's right to representation by threatening, admonishing and punishing EDWARD's counsel (former) for assisting EDWARD, and manufacturing a false and impossible justification for its admonishment.

128.  Additionally, the STATE COURT acting on behalf of the State of Illinois, intentionally impeded EDWARD's right to self-representation.

129.  The STATE COURT acted with animus toward EDWARD as being from "out-of-state" and acted intentionally to deprive EDWARD of his rights.

130.  The STATE COURT has acted to deny EDWARD due process.

131.  The STATE COURT's conduct has worked to deny EDWARD due process by interfering with his right to self-representation and the ability to work with Counsel.

132.  EDWARD has incurred significant legal expenses and damages due to the STATE COURT's actions.

**WHEREFORE**, the Plaintiff, EDWARD WEINHAUS, respectfully requests this Court grant the following relief:

A. Enter judgment against the State of Illinois finding the State of Illinois having violated EDWARD's right to due process;

B. Enter judgment against the State of Illinois finding the State of Illinois having violated EDWARD's civil rights;

C. Enter judgment against the State of Illinois enjoining the State of Illinois from restricting EDWARD's rights to self-representation, to petition the Court, or to hiring effective counsel;

D. Enter judgment against the State of Illinois, in an amount to compensate EDWARD for damages;

E. Enter judgment against the State of Illinois, in an amount to compensate EDWARD for the cost of this action;

F. Enter judgment against the State of Illinois, for punitive damages; and

G. For other such and further relief as is deemed equitable and just.

**COUNT III: 42 U.S.C § 1983 AGAINST NATALIE, STEVEN, BARRY AND ADRIENNE FOR INTERFERING WITH EDWARD'S RIGHT TO TRAVEL UNDER COLOR OF LAW**

Comes now Plaintiff, EDWARD, and for Count III of his claim for relief against the defendants herein, allege and state as follows:

133.    EDWARD restates and re-alleges each of the allegations herein in Paragraphs 1-132.

134.    The Defendants have acted under color of law in enforcing the Modified JCJ with Travel Mandate.

135.    The Defendants acted with animus towards EDWARD because he was from "out-of-state."

136.    The Modified JCJ with Travel Mandate restricts EDWARD's Right to Travel.

137.    EDWARD, the children, and the relationship between them have suffered as a result of the Defendants' actions, causing EDWARD emotional and mental damage, as well as pain and suffering.

138.    EDWARD incurred expenses and legal fees in attempting to assert his Constitutional Rights.

139.    EDWARD incurred travel expenses for the exchanging of his Right to Travel simply to be with the children.

140.    EDWARD incurred travel expenses to Illinois when his right to the children were withheld due to the Defendants' restriction of his use of the roadways, highways, parks and streams of commerce of Illinois.

**WHEREFORE**, the Plaintiff, EDWARD WEINHAUS, respectfully requests this Court grant the following relief:

> A. Enter judgment against the Defendants, jointly and severally, finding the Defendants violated EDWARD's civil rights under color of law;
>
> B. Enter judgment against the Defendants, jointly and severally, in an amount to compensate EDWARD for damages;
>
> C. Enter judgment against the Defendants, jointly and severally, in an amount to compensate EDWARD for travel expenses;
>
> D. Enter judgment against the Defendants, jointly and severally, in an amount to compensate EDWARD for the costs of this action;
>
> E. Enter judgment against the Defendants, jointly and severally, for punitive damages;

F. Enter judgment against the Defendants enjoining the Defendants from withholding the Weinhaus children on EDWARD's Named Weekends; and

G. Enter judgment against the Defendants for other such and further relief as is deemed equitable and just.

## COUNT IV: 42 U.S.C § 1985(3) AGAINST NATALIE, STEVEN, BARRY AND ADRIENNE FOR CONSPIRING TO DENY EDWARD HIS RIGHT TO TRAVEL

Comes now Plaintiff, EDWARD, and for Count IV of his claim for relief against the defendants herein, allege and state as follows:

141.    EDWARD restates and re-alleges each of the allegations herein in Paragraphs 1-140.

142.    The federal statute 42 U.S.C. § 1985(3) creates a private right of action and is available for two private rights, that do not rely on the 14th Amendment State Action requirement; they are the right not to be held as a slave under the 13th Amendment and the Right to Travel under the Privileges and Immunities Clause. *Griffin v. Breckenridge*, at 105-06.

143.    Much as a hypothetical order of the STATE COURT enslaving EDWARD to the Defendants would not give the Defendants the right to hold EDWARD as a slave and escape liability, the STATE COURT's Modified JCJ with Travel Mandate does not give the Defendants the right to restrict EDWARD's Right to Travel and escape liability. Indeed, doing either of them – holding slaves or restricting the Right to Travel – according to the laws of the United States under 42 U.S.C. § 1985(3) create civil liability and a private right of action.

144. Throughout the period from Halloween Weekend 2015 until the present the Defendants have withheld and further threatened to withhold the children from EDWARD should he choose not to travel with them outside the State of Illinois on his Named Weekends with or without the Travel Mandate.

145. Throughout the period from Halloween Weekend 2015 until the present the Defendants have required EDWARD to travel out of the State of Illinois once he had the children as a condition of giving the children to EDWARD on his Named Weekends, having otherwise forced an exchange of EDWARD's ability to rear the children for his agreement to only use the roads, highways, parks, hospitality and instruments of commerce of the state of Illinois for the purpose of leaving it if he were with the Weinhaus children.

146. The Defendants acted with animus towards EDWARD because he is an "out-of-state" resident.

147. STEVEN, BARRY, and ADRIENNE planned, executed and supported NATALIE in all of her actions noted in this action, including but not limited to giving NATALIE financial support, withholding the children on EDWARD's Named Weekend from EDWARD when he planned on using the roadways, highways, parks, hospitality and streams of commerce of Illinois for a purpose other than leaving it should he have the children.

148. The Defendants actively held the children from EDWARD in exchange for his restricted use of the roadways, highways, parks and streams of commerce of Illinois.

149. The Defendants' behavior restricted EDWARD's Right to Travel.

150. The Defendants acted together with the intent to deprive EDWARD of his Right to Travel.

151. The Defendant's actions were a conspiracy to deprive EDWARD of fundamental rights.

152. EDWARD, the children, and the relationship between them suffered as a result of the Defendants' actions, causing EDWARD emotional and mental damage, as well as pain and suffering.

153. That EDWARD incurred expenses and legal fees in attempting to assert his constitutional Rights.

154. EDWARD incurred travel expenses for the exchanging of his Right to Travel simply to be with the children.

155. EDWARD incurred travel expenses to Illinois when his right to the children were withheld due to the Defendants' dislike of his use of the roadways, highways, parks and streams of commerce of Illinois.

**WHEREFORE**, the Plaintiff, EDWARD WEINHAUS, respectfully requests this Court grant the following relief :

- A. Enter judgment against the Defendants, jointly and severally, finding the Defendants have acted in a conspiracy to deprive EDWARD of his civil rights;

- B. Enter judgment against the Defendants, jointly and severally, in an amount to compensate Plaintiff for damages;

- C. Enter judgment against the Defendants, jointly and severally, in an amount to compensate Plaintiff for travel expenses;

D. Enter judgment against the Defendants, jointly and severally, in an amount to compensate Plaintiff for travel expenses;

E. Enter judgment against the Defendants, jointly and severally, for the cost of this action;

F. Enter judgment against the Defendants for punitive damages as allowed by law;

G. Enter judgment against the Defendants enjoining the Defendants from withholding the Weinhaus children on EDWARD's Named Weekends; and

H. Enter judgment against the Defendants for other such and further relief as is deemed equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to the United States Constitution, the Fed. Rules of Civ. P. 38, and other applicable rules and statutes, Plaintiff EDWARD WEINHAUS hereby demands a trial by jury on all issues herein triable of right by a jury.



_____
EDWARD WEINHAUS

Under penalties as provided by law, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to those matters which are stated to be on information and belief, and as to such matters the undersigned believes the same to be true.

_____
EDWARD WEINHAUS

EDWARD A. WEINHAUS

*Pro Se*, Plaintiff
10859 Picadily Sq Dr
St. Louis, MO 63146
(314) 580 9580

10/1/14                                                                    #39232

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF                    )
                                         )
EDWARD A. WEINHAUS,                      )
                                         )
            Petitioner,                  )                    **Associate Judge**
                                         )                 **Gregory Emmett Ahern, Jr.**
            - and -                      )   No. 2012 D 8800
                                         )                    OCT 0 2 2014
NATALIE B. WEINHAUS,                     )
                                         )                 **Circuit Court - 2090**
            Respondent.                  )

*Agreed*

**CUSTODY JUDGMENT**

THIS CAUSE coming on to be heard by agreement of the parties, EDWARD A.
WEINHAUS ("EDWARD") by and through his attorneys, O'Connor Family Law P.C.; NATALIE B.
WEINHAUS ("NATALIE") by and through her attorney, Brian Hurst of Hurst, Robin & Kay, LLC;
the minor children by and through the child representative, Joel J. Levin; the Court being fully
advised in the premises,

**WITNESSETH**

**WHEREAS,**

A.      That the parties were married on February 24, 2002, in Chicago, and said marriage
was registered in the County of Cook, State of Illinois;

B.      That, as a result of the marriage, five children, namely, M.W., age twelve (12), born
November, 2002; L.W., age ten (10), born January, 2004; So.W., age nine (9), born August, 2005;

EW                                      – 1 –                                      NW

EXHIBIT_A 1/19                    WEINHAUS_v_COHEN_EXHIBITS 1/34

Sa.W., age six (6), born March, 2008; and E.W., age three (3), born February, 2011, were born to the parties. No children were adopted by the parties and NATALIE is not now pregnant.

C.    WHEREAS, both parties are fit and proper people to have the care, custody, control and education of the minor children, subject to the terms and conditions herein

D.    That the parties have entered into a Joint Parenting Agreement dated the 2nd day of October, 2014, at Chicago, Illinois, concerning the questions of the respective rights of each party in and to the care, control and education of the minor children. Said Agreement was entered into freely and voluntarily between the parties; it is in the best interests of the children and ought to receive the approval of this Court.

**THIS SPACE INTENTIONALLY LEFT BLANK**

EW

– 2 –

NW

**JOINT PARENTING AGREEMENT**

NOW, THEREFORE, in consideration of the foregoing and in further consideration of the mutual and several covenants contained below, and for other good and valuable considerations by each to the other delivered, the receipt and sufficiency of which is hereby acknowledged, the parties do hereby freely and voluntarily agree by and between themselves as follows:

**ARTICLE I**

**CHILD CUSTODY**

1.1     The parties mutually agree and acknowledge that EDWARD and NATALIE shall have joint care, custody, control, and education of the parties' minor children, subject to the terms and conditions herein, and NATALIE shall be the primary residential parent.

**ARTICLE II**

**PARENTING SCHEDULE**

2.1     The parties warrant and acknowledge that EDWARD presently lives outside of the Chicago, IL area (in St. Louis, Missouri), and therefore agree that he shall have parenting time in Illinois and outside of the Chicago, IL area on a regular and routine basis.

2.2     EDWARD shall have regular and routine parenting time with the minor children up to eighteen weekends per "fiscal year" outside the State of Illinois, which shall include additional days of the week, as specifically set forth in paragraphs 2.3 through 2.9, below. The "fiscal year" shall commence November 1st of each year and terminate on October 31st of each year. For each of the eighteen weekends of EDWARD's visitation, he shall take all five children in order to exercise said weekend visitation, except as set forth in paragraph 2.3 below. The weekends shall not be consecutive unless both of the weekends occur entirely during spring break, EDWARD's summer visitation or a special occasion as contemplated in Paragraph 2.9 hereof.

EW

– 3 –

NW

2.3    EDWARD's regular and routine parenting time with the minor children, outside the

State of Illinois, shall be as follows:

> EDWARD shall have up to ten long weekends per year on 30 days' notice to NATALIE (with said ten long weekends included within and counted as part of the eighteen weekends provided for in Section 2.2). EDWARD shall use his best efforts to correlate the long weekends with school holidays including Institute days or other days off from the school year such as President's Day, Memorial Day, Labor Day, Columbus Day and Martin Luther King Day. EDWARD shall take all five children during these weekends. A long weekend shall be defined as commencing after school on the day preceding the weekend until the evening prior to school resuming as provided in paragraph 2.10, below. If EDWARD decides that any child(ren) will not travel with him for visitation, he shall make arrangements for the care of that child(ren) for that weekend.

*as NW*

2.4    Spring Vacation: EDWARD shall have the children every Spring Break for a period

*if in possession* totaling two full weekends and the week of Spring Break, beginning at the end of the last day of

school before Spring Break begins,; return the evening prior to school recommencing. ~~If~~

*children bring* ~~Passover falls within the scope of the Spring Break period, EDWARD shall have Passover for that~~ *NW*

*is sur- 2* ~~year. If Passover falls outside of Spring Break, then the holidays shall be attributable to NATALIE.~~

*we issuer their* 2.5    Father's Day: EDWARD shall have the children every Father's Day weekend from

*completely* Thursday to Monday provided that school is not in session, and if in session, the weekend shall be

*possession, only.* as provided for in paragraph 2.3.

2.6    Summer: EDWARD shall have the children for one month each summer from the

Thursday before the Fourth of July for four weeks ending on the following Sunday for a total of 31

days. NATALIE shall be allowed up two weeks of summer vacation with the children, not to

*n odd numbered years* interfere with EDWARD's time. NATALIE shall provide notice to EDWARD of her summer

vacation dates by May 31st.

*and 31 days starting the Thursday before Father's Day in even numbered years.* *NW*

EW                      – 4 –               NW

2.7  Thanksgiving: EDWARD shall have the children on—Thanksgivings, in even-numbered years, from after school on the day which school breaks for the holiday until the Sunday following the holiday. NATALIE shall have Thanksgiving with the children on odd-numbered years from after school on the day which school breaks for the holiday until the Sunday following the holiday.

2.8  Winter Vacation:  EDWARD shall be allowed to take the children for up to one week of winter vacation, to include one weekend only, in odd-years only. EDWARD shall provide NATALIE notice of which week he elects at least forty-five (45) days prior to said week, and shall make his best efforts to do so earlier.

2.9  Special Occasions: As part of his 18 weekends, EDWARD will be able to have the children for up to three family special occasions, such as weddings, Bar Mitzvahs, annual reunions, and the like, provided that 45 days' notice is provided, allowing the children one day off school for each, if they occur during the school year. However, said family special occasion shall not conflict with NATALIE's parenting time during Thanksgiving, Passover, Mother's Day and the day of Natalie's birthday. In addition, upon the death of, or verified critical illness of, any direct family member of either EDWARD or NATALIE, the children will be made available for visitation and travel of up to 3 days with limited notice. NATALIE shall be allowed three special occasion weekends per year provided that such weekends shall not interfere with EDWARD's parenting time during Thanksgiving, Father's Day, the day of EDWARD's birthday or Spring Break. NATALIE shall provide EDWARD at least 45 days' notice of such special occasion weekends. To the extent both parties have a special occasion occurring on the same weekend, the party that first provides notice of the same shall have parenting time on said weekend.


EW

– 5 –

NW

NW

EXHIBIT_A 5/19       WEINHAUS_v_COHEN_EXHIBITS 5/34

2.10    Transportation to and from Edward's visitation outside of the Chicago, IL area: For all visitation periods which occur in St. Louis, or outside of Illinois, the following shall govern commencement and concluding times along with transportation consideration: NATALIE shall be responsible for dropping off and picking up the children at the point of transportation which shall be limited to the train station (Union Station), bus station (Greyhound or similar), or airport (O'Hare or Midway) or other location agreed to in writing by NATALIE in advance, at a time indicated by EDWARD in his notice to NATALIE (drop-off by NATALIE shall be 45 minutes before bus or train and 75 minutes before a flight). EDWARD shall return to Chicago with the children by either rail, bus or plane such that the returning transportation shall be scheduled to arrive in Chicago on or before 8:30 p.m. If EDWARD drives the children back, then they shall arrive at NATALIE's home no later than 8:30 p.m. To the extent either party arrives late through no fault of the transporting party (e.g., a force majeure event that makes roads impassable, but excluding routine travel occurrences such as heavy traffic) at the designated transportation terminal such that the selected mode of transportation is missed necessitating a change in travel tickets that party shall be responsible for the cost incurred, if any, of changing the travel tickets.

2.11    EDWARD's regular and routine parenting time with the minor children in Illinois shall be as follows:

A.    To the extent that EDWARD is in the Chicago area, he may have up to two dinners per week (Monday through Thursday only) with the children. If he is available for only one dinner in any given week, then he shall take all five children on the dinner. If he is available for two dinners in any given week, then he may split up the children for the dinner periods. For any week preceeding EDWARD's weekend vistiation, he shall have only one dinner visiation. EDWARD shall give 7 days' notice for weekday visitation. EDWARD's visitation with, the children shall take precedence over any scheduled activity and EDWARD shall have the discretion as to whether the child attends the activity or dinner with him. Weekday visits shall be from 4:00 to 7:30 for with pickups and drop offs at NATALIE's home.

EW

NW
NW

– 6 –

WEINHAUS_v_COHEN_EXHIBITS 6/34

*(handwritten, left margin):* By NW

B. *(handwritten):* EDWARD stratton schedule his ovexnight birthday visitation on the date of the child's planned birthday party if said 2.12 day is not the day on the calendar if the time EDWARD is selecting his birthday visitation fall.

EDWARD shall be entitled to an overnight visitation with each child around his/her respective birthday. EDWARD shall provide NATALIE fourteen (14) days notice of his selected day to have visitation with the child having the birthday. The visitation may be overnight. EDWARD shall pick up the child directly from school and return the child to school the following day. This shall not interefere with EDWARD's ability to select his weekends to occur on a child's birthday.

*(handwritten, right margin):* NW But not on *(illegible)* he

*(handwritten insert):* or Her next school is not in session

2.12 Additional Visitation guidelines: *(handwritten):* NW pick up at Natalie's home or Natalie's home or a room to Natalie's home if school is not in session.

The parties, by written agreement via e-mail, text message or other correspondence, shall have the right to alter, modify and otherwise arrange for other specific visitation periods other than those shown above, and on such terms and conditions as are conducive to the best interest and welfare of the minor children. Any specific change to parenting time from those set forth above shall be construed as temporary in nature and one-time only, unless otherwise agreed, in writing, by the parties. The parties may agree to extra visitation for EDWARD. Any modification of or addition to EDWARD's visitation shall require both parties' advance written confirmation and agreement of all terms of said visitation and may not thereafter be rescinded.

*(handwritten, right margin):* by NV

B. NATALIE is to provide EDWARD relevant car seat/booster for Chicago visitation. EDWARD must return the same with the children upon conclusion of the visitation.

*(handwritten):* seasonably appropriate footware NW by

C. NATALIE shall pack the children with adequate clothing for all trips with EDWARD, including 2 ~~pairs of shoes,~~ 3 days' change of clothing in addition to their prescriptions, personal items, and their tablet/mobile/electronic devices and chargers. NATALIE shall also provide children's bathing suits and reasonable leisure equipment for visitation. ~~EDWARD~~ shall return *all* items to ~~NATALIE~~ at the conclusion of the parenting time. ~~Each party shall have the obligation to replace stolen or lost electronics, which occur during their respective parenting time. Said replacement shall be made within five days of it being lost or stolen.~~

*(handwritten):* Each parent NW by

D. If EDWARD's parents are in Chicago, NATALIE may make the children available for reasonable times with his parents.

E. "Days of notice" shall include the date of notice if provided before 12:00 p.m. CT and date of visitation.

*(handwritten signature)*

EW

– 7 –

*(handwritten signature):* NW

NW

F.    Provided that EDWARD gives NATALIE proper notice of his regular and routine visitation with the children, she does not have the authority to decline or otherwise restrict said visitation, except as it pertains to NATALIE's special occasion weekend as set forth in Paragraph 2.9, her holiday time such as Thanksgiving, Passover, Mother's Day and her birthday, her summer vacation time or her parenting time during winter break.

G.    The parties shall not interact to any extent than is absolutely necessary during transitions.

H.    Both parties shall make reasonable accommodations as to the children's attendance at their activities, while the children are in Illinois.

I.    Both parties have the right to attend activities of the children irrespective of parenting time delineation. However, absent agreement of the parties Edward shall not pick up the minor children from their school, camp or any extracurricular activity, play date or appointment at any time without Natalie's prior written approval.

*[handwritten margin note: edward shall make his best efforts to do whenever if the children is to their whenever his complete during the parenting time]*

### ARTICLE III

### JOINT PARENTING GUIDELINES

3.1    The parties covenant and agree that both parties shall have rights and responsibilities regarding decision-making on major issues of the minor children's academic, religious training and health and major medical care as provided below.

3.2    Physical Healthcare: NATALIE shall be responsible for maintaining the minor children's routine health and dental care, such as annual appointments, academic check-ups, shots, cleanings, fillings, and the like as part of the children's day-to-day care. NATALIE shall notify EDWARD of all appointments, as soon as they are scheduled and the reason for the appointment. If any appointment is for an acute issue, then NATALIE shall advise EDWARD by either text or email when it is determined that children are seeing a treater on an acute basis. NATALIE shall advise EDWARD of any diagnosis or recommendation of a treating professional that is non-routine or involves the referral to another treater or specialist, or is a modification to an

EW

– 8 –

NW

EXHIBIT_A 8/19        WEINHAUS_v_COHEN_EXHIBITS 8/34

—psychiatric care, NW

existing prescription. As it pertains to non-routine medical and dental care, such as orthodontia, elective surgery, or recommended major medical that is non-emergent but medically recommended, absent agreement of the parties, there shall be no treatment (absent an emergency) until the following has been done: (1) NATALIE shall fully disclose the condition to EDWARD and give him complete access to and the opportunity to contact medical personnel treating the child and information regarding same, (2) NATALIE shall seek and consider EDWARD's input, and if there is still no agreement, (3), both parties may obtain a second opinion for treatment at their own cost, provided said party gives the other party five days' notice of said party's intention to seek said second opinion, and said second opinion shall be obtained within fourteen (14) days from the date of notice. If the two medical professionals have the same recommendation/opinion, NATALIE shall effectuate said treatment. If there is a difference of opinion, NATALIE shall have the authority to make the final decision. Treatment for chronic conditions such as asthma, diabetes, allergies, or acne, shall be considered routine after an initial diagnosis. The parties shall jointly determine any non-routine medical and dental care. NW In cases of a medical emergency, the party in actual possession of the minor children is authorized to make any such decisions and that parent shall contact and inform the other parent of the decision immediately. Both shall have full access to the children's medical information.

3.3     Mental Healthcare:

(a)     The parties agree that, the three (3) oldest children are in need of counseling and shall continue counseling at the Josselyn Center, or as otherwise may be agreed to by the parties. Sa.W. shall be assessed at the Josselyn Center to determine her needs insofar as counseling is concerned and the parties shall comply with the recommendations of the assessment. NATALIE shall schedule said assessment within fourteen. NW The children days NW

EW                                                    – 9 –                                                    NW

shall remain in counseling at the direction of the therapist. Neither party may unilaterally terminate therapy. NATALIE shall be obligated to schedule all appointments and take the children on a routine basis to appointments scheduled for the best interest of the children's mental health needs. Both parties shall ensure that the children are compliant with any

the children's NW

medication prescribed by a mental health provider while the child is in the party's care. To the extent that mental health appointments conflict with after school activities, mental health appointments shall take precedence over same. To the extent that EDWARD's parenting time falls during a scheduled therapy appointment, EDWARD shall be responsible for transporting the child to said appointment. . Both parties shall have equal access to the therapist, and subject to the therapist discretion. If the parties disagree at any point over the course of mental health care for their children, then they shall take their dispute to mediation either with Joel J. Levin, or a mediator that they agree upon. If they cannot agree upon a mediator, Joel J. Levin shall select one for them. If they cannot resolve the dispute in mediation, then either party may petition the court accordingly. The status quo shall hold until such time as the issue is resolved in mediation or by court order. The cost of mediation shall be equally divided. Both parties shall sign releases to school counselors to see the Weinhaus children unless jointly agreed by both Parties not to do so. Both parties shall execute all necessary consents for treatment as recommended by that child's doctor or therapist.

3.4     Education:

The children shall attend the Skokie public schools for the remainder of the 2014-15 school year. E.W. shall remain at his current pre-school so long as NATALIE remains in the same home or general vicinity. In the future, the children shall attend the public school in NATALIE's

EW

NW

– 10 –

School District unless NATALIE elects to send the children to private school. If NATALIE elects, without consultation and agreement of EDWARD to send the children to private school, she shall be solely financially responsible for all costs thereof, except as it pertains to preschool. If the parties agree to private school, they shall share the cost thereof in accordance with their agreement.

When enrolling any child in school, including pre-school, NATALIE shall list EDWARD as a secondary contact, indicating that he is the father of the children and that the parties share joint custody of the children, to the extent it may be necessary to so advise the school. Neither party may advise the school that the other is prohibited from speaking to anyone at the school or has otherwise limited access to the children's academic information. Both parties shall have the right to inspect the minor children's school and medical records and to communicate with teachers, school personnel, counselors and physicians to discuss the minor children's standing and progress; except that such inspection and communication shall in no event happen in the presence of the children, and any such communication shall be subject to Section 3.13 below. Both parties may attend parent-teacher conferences and school or other activity based events for the benefit of the children irrespective of parenting time delineation.

The parties shall request that officials at the minor children's school supply both parents with copies of grade reports, evaluations, report cards and notices of school activities and programs and access to parent-portals for on-line access. If the school will provide this information only to one parent, then the party, to whom it is given/allowed, shall immediately and routinely pass on the information to the other parent. Further, for sporting activities and other extra curricula activities, all coaches, tutors, teachers, league administrators, activity coordinators and the like shall be given both parties names and contact information upon registration, and both

EW

NW

EXHIBIT_A 11/19

WEINHAUS_v_COHEN_EXHIBITS 11/34

parties shall be added to communication lists. NATALIE shall notify EDWARD upon signup and pass along coach/leader contact information upon receipt.

    3.5    Religion: The children shall be raised in the Jewish faith. Neither parent shall interfere with religious education of the children consistent with their upbringing.

    3.6    Each party shall keep the other informed as to the exact place where each of them resides, the telephone numbers of said residence and cellular telephone, email address, his or her place of employment.

    3.7    Itinerary Obligations:

    a.    Except for EDWARD's regular and routine parenting time under Paragraph 2.2, prior to any travel out of Illinois with the children, the parties must provide the other with reasonable notice of the intended travel with a full itinerary that includes flight/destination information, the contemplated period of time outside of the State, the place they will be lodging, and telephone number of where the minor children will be during the period of time outside the State of Illinois. Reasonable notice shall be interpreted as at least forty-eight hours for a trip of six days or less, and thirty (30) days for a week-long or more vacation period, and forty-five (45) days if out of the country. Day trips to any state contiguous to Illinois do not require itineraries. Changes to the itinerary should be both communicated by email and the family calendar updated (WeinhausCalendar on GoogleCalendar).

    b.    For EDWARD's regular and routine parenting time EDWARD shall indicate the location of his parenting time when he gives notice as provided in paragraph 2.2. He shall indicate whether the parenting time will be in St. Louis, or elsewhere. For any parenting time that is in St. Louis, EDWARD shall provide NATALIE with the mode of transportation, including departure and arrival times seven (7) days in advance of the commencement of the travel

EW

– 12 –

NW

weekend. If the parenting time will be exercised "elsewhere," then he shall comply with paragraph 3.7.a, above. Changes to the itinerary should be both communicated by email and the family calendar updated (WeinhausCalendar on GoogleCalendar).

   c. For EDWARD's parenting time identified in paragraph 2.3 through 2.8, the presumption shall be that the parenting time will be exercised in St. Louis. EDWARD shall provide notice to NATALIE, in compliance with 3.7.a above if he will not be taking the children to St. Louis for the parenting time, and shall provide immediate notice if EDWARD travels with the children outside of Missouri, including a full itinerary.

   d. Nothing in this Agreement shall be construed to permit either party to remove the permanent residence of the minor children from the State of Illinois without first securing the written consent of the other party or securing the approval of the Circuit Court of Cook County, Illinois.

   e. If a party allows a child(ren) to travel out of town and neither party is present, the party allowing the child to travel shall notify the other party as soon as said trip is scheduled, and provide a full itinerary, including contact information.

   f. If either party travels out of town for on an overnight basis without the children, during their respective parenting time with the children, then such person shall notify the other where the children will be staying and shall provide a telephone number where the children can be reached.

*[handwritten: g. For any parenting time which is scheduled to occur outside NW, if if edward cancels with less than 14 days before it is set to nurture place and natalie had already scheduled commitments which necessitate childcare, edward shall pay for said childcare by his cancelling]*

3.8 The parties agree that they will refrain from making any disparaging remarks about the other party when the children are in their possession. The parties further agree that they will not discuss, disclose the terms of, or provide copies of any Settlement Agreement reached or Judgment entered in the parties' action, including but not limited to the terms regarding the

EW

– 13 –

NW

support of the children with the children.  The parties further agree that they shall not disclose, discuss or disseminate any material prepared for or created in connection with or arising out of the divorce proceedings with the children.

     3.9    The parties agree to exert every effort to maintain free access and unhampered contact between themselves and the other parent and to foster affection and respect between the children and the other parent. Neither parent will intentionally do anything to alienate the children from the other parent, nor that would intentionally impair the natural development of love and respect for each parent.

     3.10   The parties will advise any significant others and family members of the terms of this Judgment and request that they abide by the terms and provisions thereof.

     3.11   The parties have considered seriously the aforesaid custody provisions and determined that they are in the best interests of the minor children.

     3.12   The parties agree to review the terms of this Agreement periodically.

     3.13   If either party intends intends to send a communication or have a conversation with the children's therapist, teacher, or doctor, and express a concern or complaint regarding the other party, the communicating party must copy the other party on the communication, or otherwise advicse the other party in writing of said concern.  No response is necessary; it is simply a notice.

EW

– 14 –

NW

## ARTICLE IV

## COMMUNICATION AND TECHNOLODY

4.1    The parties shall keep and maintain the current family calendar of all activities and appointments for the children on the "WeinhausCalendar" on GoogleCalendar. Each party is affirmatively obligated to input information concerning the children as it becomes known to them, but in no more than two (2) days after coming into possession of the information.  This information shall include, but not be limited to: activities, field trips, school events (including parent-teacher conferences/report card pick-up), and doctor appointments. All notifications for visitation and itineraries shall be made via said Calendar. When Edward informs Natalie, no later than the previous day, that Edward is in the Chicago, IL area, Edward shall not be prohibited from transporting a child to/or from a noticed activity on the Calendar if that child would not otherwise attend. Only a doctor's visit for illness ~~or therapy~~ within the previous 24 hours as noticed before the visit on the calendar for that child, or by joint agreement shall serve as exceptions

4.2    Each parent shall have the children call the other parent via Skype one time per day between the hours of 7:00pm and 8:00 pm. The contact shall be up to 15 minutes, five days per week, and 30 minutes, two days per week. However, if the children request additional time, or are working through homework, neither parent may interfere with said request, provided it is not past the children's bedtime and no other homework is outstanding.  This shall not, however, be the extent of the telephonic contact with the children, and instead, shall be the allocation for dedicated Skype contact.  To the extent that the hours of 7:00 to 8:00 p.m. each evening are not practicable for the parent in possession, or the parent to be receiving the call, the parties shall coordinate a mutually convenient time for the children to call the other parent that same evening.

*[handwritten margin notes: "NW", "Each parent ,halluse eir est forts o comply ,ith his negrapy"]*

EW

– 15 –

NW

Either parent may contact the children via email, text, or phone as is reasonable.  The children shall have unrestricted access to any family phone, laptop, cellphone, or tablet to call, email, text, videocall, FaceTime and Skype the other parent. Neither parent shall interfere with or otherwise limit a child's call with the other parent by way of supervising actively or passively, requiring speakerphone, or other imposition on the phone call.  No method of calling, such as videoconferencing, Google Hangouts, Skype, FaceTime shall be unreasonably withheld for this call period.  The imposition of discipline against one of the children may not be used to limit or cut-off Skype access to the other parent.  If discipline in the form of computer/tablet/phone confiscation has been imposed, then that parent shall put said information on the WeinhausCalendar immediately upon imposition of the discipline and that parent shall avail him/herself to discuss the reason for the discipline with the other parent by voice or email upon request. The disciplining parent shall choose how to communicate and this discussion is for informational purposes

4.3    The children shall be provided privacy to the extent possible to converse with the other parent, to include a private room outside the presence of the other parent. NATALIE shall maintain at least one cordless telephone in her residence, and the children shall be allowed to speak to EDWARD on said cordless telephone.

4.4    The children's electronic accounts, including but not limited to E-mail, electronic messaging, and social networking accounts shall remain in existence and shall not be deleted or otherwise interfered with by either party.  Both parties shall have the passwords thereto. NATALIE and EDWARD shall further maintain Internet access in their respective homes and Wi-Fi capacity for family devices. If the children are cared for regularly outside their respective homes at "alternative homes," such as at grandparents' or ~~paramour's~~ Significant Other NW homes, then the parent in

EW

– 16 –

NW

NW

possession shall ensure the children shall have access to a device and wi-fi internet access for contact with the other parent. An alternative home shall not be used to in any way interfere with contact between the child and parent.

4.5    Neither party shall engage any media outlet for their children to participate without the joint written consent of the other party.

4.6    The parties lmay advise each other of any third party caretakers they employ on a regular basis, including contact information. Any primary caretakers shall be advised of the nature of this settlement, and shall be under direction to facilitate communication with the other party in accordance with the Custody Judgment and ensure the children and other parent's privacy is respected.

EW

– 17 –

NW

## ARTICLE V

### CONTINUING JURISDICTION

5.1     The Circuit Court of Cook County, Illinois, shall retain jurisdiction to enforce the terms and conditions herein.

**IN WITNESS WHEREOF**, the parties have set their hands and seals the day and date first above written.

_____
EDWARD A. WEINHAUS

_____
NATALIE B.  WEINHAUS

EW                                            – 18 –                                            NW

**IT IS ACCORDINGLY ORDERED, ADJUDGED AND DECREED:**

     A.     That the parties are awarded a Judgment of Custody awarding the joint care, custody control and education of the minor child to each of them.

     B.     That the Joint Parenting Agreement between the Petitioner and the Respondent, dated the 2nd day of October, 2014, is hereby incorporated herein into this Custody Judgment; all of the provisions of said Agreement are expressly ratified, confirmed, approved and adopted as the Orders of this Court; and each of the parties hereto shall perform any and all of his or her duties and obligations under the terms of this Agreement.

     C.     That this Court expressly retains jurisdiction of this cause for the sole and exclusive purpose of enforcing all the terms of this Custody Judgment, including all the terms of the Joint Parenting Agreement made in writing between the parties hereto dated the 2nd day of October, 2014, as hereinabove set forth.

ENTERED:    Associate Judge
Gregory Emmett Ahern Jr.

OCT 02 2014

Circuit Court 2090 #2090
JUDGE    NO.

Attorney Code: 39232
O'CONNOR FAMILY LAW, P.C.
Attorney for Petitioner
30 North LaSalle Street, Suite 2424
Chicago, Illinois 60602
(312) 621-0100

EW

NW

– 19 –

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE: THE MARRIAGE OF )
EDWARD A. WEINHAUS, )
             )
          Petitioner, )
             )
          and )    No.   12 D 008800
             )
NATALIE B. WEINHAUS, )
             )
          Respondent. )

## JUDGMENT FOR DISSOLUTION OF MARRIAGE

THIS CAUSE coming on to be heard on the Petition for Dissolution of Marriage which was filed on September 13, 2012, the Petitioner filing a pro se appearance on April 16, 2014, the Respondent being represented by **BRIAN J. HURST of HURST, ROBIN & KAY, LLC,** the, court having jurisdiction of the parties and the subject matter hereof finds:

     1)     The grounds were established on this matter at trial on October 9, 2014.

     2)     This Court has jurisdiction of the parties hereto and of the subject matter hereof.

     3)     At the commencement of the within action, the Petitioner and Respondent were residents of the State of Illinois and had maintained said residency for a period of at least ninety (90) days preceding the entry of the within Judgment for Dissolution of Marriage.

     4)     The parties were lawfully married on February 24, 2002, and that said marriage was registered in Chicago, Cook County, Illinois.

     5)     There were five children born to the parties as a result of their marriage, to wit: M.W.(born 2002), L.W.(born 2004), S.W.(born 2005), S.W.(born 2008), and E.W.(born 2011), no other children were born to or adopted by the parties and the Respondent is not now pregnant.

     6)     During the course of the marriage irreconcilable differences have arisen between the parties causing an irretrievable breakdown of the marriage. The parties have been separated for a period in excess of the two (2) year separation period. The parties have been living separate and

apart since October of 2012.

7)      The Petitioner has proven the material allegations of his Petition for Dissolution of Marriage by substantial, competent and relevant evidence; and that a Judgment for Dissolution of Marriage should be entered herein.

8)      That it is in the best interests of the parties and their minor children that a Judgment for Dissolution of Marriage be entered instanter. This cause has been contentious and that the best interests of the children necessitate the bifurcation of this cause. The Court has heard all the evidence in this case and has taken all financial matters under advisement and will issue its ruling on all matters of property division and support in due course.

**WHEREFORE, IT IS HEREBY ORDERED ADJUDGED AND DECREED:**

A.    A Judgment for Dissolution of Marriage shall be awarded to the parties dissolving their marriage and the bonds of matrimony heretofore existing between the parties is hereby dissolved.

B.    That the Court will issue a ruling on the contested matters of property division and support in due course.

C.    That the parties are awarded joint custody of the minor children, M.W., L.W., S.W., S.W., and E.W., subject to the terms and conditions of the Joint Parenting Agreement.

D.    That this court shall retain jurisdiction of this matter to enforce the provisions of this judgment and temporary orders until a final Memorandum and Opinion are entered, then the terms and conditions that it orders.

E.    That the Wife may resume the use of her maiden name Chernawsky.

Associate Judge
Gregory Emmett Ahern, Jr.

ENTER:        APR 1 5 2015

Circuit Court - 2090

_____
JUDGE

**HURST, ROBIN & KAY, LLC - #49363**
**Counsel for Respondent**
**30 N. LaSalle, Suite 1210**
**Chicago, Illinois 60602**
**(312) 782-2400**

- Apr. 26. 2016  1:08PM

No. 3019   P.  2

#39232

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

IN RE: THE MARRIAGE OF            )
EDWARD A. WEINHAUS,               )
                                  )
                Petitioner,       )
                                  )
        and                       )        No.    12 D 008800
                                  )
NATALIE B. WEINHAUS,              )
                                  )
                Respondent.       )

### AGREED ORDER

THIS CAUSE coming on to be heard on all pending petitions filed by both parties; NATALIE WEINHAUS (f/k/a NATALIE COHEN) by and through her attorney, Brian Hurst of Hurst, Robin & Kaye, LLC; and EDWARD by and through his attorney, O'Connor Family Law, PC; and the minor children by and through Joel J. Levin. The Court being fully advised in the premises, having conducted multiple pre-trial conferences and making various recommendations to the parties,

**IT IS HEREBY ORDERED:**

1.      That the Agreed Joint Custody Judgment entered October 2, 2014 ("JCJ"), is hereby modified as provided below, and only as to the specific enumerated paragraphs. To the extent that a specific paragraph is not referenced herein, the term in the October 2, 2014, Judgment shall control.

2.      The parties warrant and acknowledge that EDWARD presently lives outside of the Chicago, IL area and therefore agree that he shall have parenting time in Illinois and outside of the Chicago, IL area on a regular and routine basis. Unless specified below, parenting time shall not be restricted to the State of Illinois.

EXHIBIT_C 1/9

3.      Article II of the Joint Custody Judgment is modified by deleting the existing

sections 2.2 – 2.10 and replacing the same with the language below:

2.2 EDWARD shall have parenting with the children on the following weekends to take place outside the State of Illinois: President's Day, Memorial Day, Labor Day, Columbus Day, Veteran's Day if applicable and Martin Luther King Day, commencing after school on the day preceding the weekend until the evening prior to school resuming as provided in paragraph 2.10 in the JCJ (as further modified herein). If said weekends are preceded or followed by an Institute or other days off from school, the weekend shall also include all such days off from school. EDWARD shall additionally have other long weekends as defined by the school calendar that include a day off of school not named herein and shall notify NATALIE by August 1 ahead of the upcoming year of those weekends; provided that such weekend cannot interfere with Natalie's parenting time over Spring Break, Passover, Natalie's birthday or Winter Break and provided further that if such weekend includes Rosh Hashanah or Yom Kippur, EDWARD can select those weekends on odd-numbered years only. EDWARD shall take all five children for his weekend parenting time. If EDWARD elects not to exercise parenting time with all five children, EDWARD shall be responsible for arranging alternative care and shall provide NATALIE with information regarding the care taker within 24 hours of selecting a caretaker provided that the notification must be before the child or children are delivered to the caretaker, including the address and phone number where the child or children will remain.

2.3 Paragraph 2.3 of the JCJ is deleted.

2.4 Spring Vacation: The parties shall alternate Spring Vacation, with EDWARD having even-numbered years and NATALIE odd-numbered years.  The vacation period shall include either the weekend before or the weekend following Spring Break. In the years in which one parent has spring break, the other parent shall be allocated one weekend to include either , commencing after school on the last day of school, before spring break through Monday if at the start of Spring Break or Thursday of Spring Break through the night before school starts if at the end of Spring Break. NATALIE shall elect which weekend either she or EDWARD will have, to allow her to have the children on or close to her birthday on her Spring Break being in odd-numbered years. EDWARD shall elect which weekend either he or NATALIE will have, to allow him to have the children on or close to his birthday on his Spring Break being in even-numbered years. The parties' Spring Break Weekend selection shall also be governed by the following additional rule: If one of EDWARD's possible weekends includes EDWARD's birthday and not NATALIE's birthday, then that weekend shall be EDWARD's weekend. If one of the possible weekends includes NATALIE's birthday and not EDWARD's, then that weekend shall be NATALIE's. If both EDWARD's and NATALIE's birthday fall on the same weekend, the party that has Spring Break that year shall have parenting time the weekend of their birthday. NATALIE shall otherwise provide EDWARD her weekend selection by August 1st in the preceding year and EDWARD shall otherwise provide NATALIE his weekend selection by

2

EXHIBIT_C 2/9                    WEINHAUS_v_COHEN_EXHIBITS 24/34

August 1st in the preceding year. EDWARD's parenting time shall be exercised outside of Illinois.

2.4A Passover: The parties shall alternate having Passover with the children. EDWARD shall have even numbered years and NATALIE shall have odd-numbered years. To facilitate travel to St. Louis, the children shall travel with EDWARD after school the day of school before first Seder and be returned to NATALIE on the day following the Second Day of Passover. NATALIE shall bring the children to the transportation center identified by EDWARD and pick them up from the similarly identified transportation center. EDWARD's parenting time shall be exercised outside of Illinois.

2.4B High Holidays: The parties shall alternate having High Holidays with the children with EDWARD having the children for High Holidays on odd-numbered years and NATALIE having the children for High Holidays on even-numbered years. High Holidays shall be defined to include Rosh Hashanah which shall be defined to start at sundown on the first night of Rosh Hashanah and end at sun set on the second day of Rosh Hashanah and Yom Kippur which shall be defined to last for 24 hours from sun set to sun set. When EDWARD has the High Holidays his parenting time will be as follows. If one of the High Holidays falls on the day immediately before or after a weekend or other day off from school connecting to a weekend, EDWARD's parenting time shall commence after school on the last day before a day off from school or on the day before the start of the High Holiday, whichever is earlier, and shall end on the day before school starts or the day following the High Holiday, whichever is later, and all said parenting time will be exercised outside of Illinois. If the High Holiday falls on a day that does not connect to any other day off from school, EDWARD's parenting time shall commence after school on the day that such High Holiday begins, no later than 90 minutes before the beginning of the holiday and shall terminate at the day of the last day such High Holiday no later than 90 minutes after the holiday ends and said parenting time will take place in Illinois with Natalie dropping off and picking up the minor children no further from NATALIE's residence than Roger's Park at an address provided by EDWARD 48 hours in advance, and NATALIE shall provide holiday appropriate clothes for the children to be returned by EDWARD.

2.5  EDWARD shall have Father's Day from the Thursday before Father's Day until the Monday following Father's Day. EDWARD's parenting time shall be exercised outside of Illinois.

2.6 Summer: The parties shall alternate the right to select EDWARD's 31 days of summer time, which shall start on a Thursday and end on a Sunday. EDWARD's Summer time for 2016 shall be July 7, 2016 to August 7, 2016. EDWARD shall select his dates for even-numbered summers and NATALIE shall select his dates for odd-numbered summers. The selection shall be by November 15th of the previous year or revert to the other party until January 15th. If neither party elects by January 15th, then EDWARD's time will be presumed to begin the Thursday before July 4th and run 31 days.

3

EXHIBIT_C 3/9                   WEINHAUS_v_COHEN_EXHIBITS 25/34

a.      If EDWARD's time does not occur during Father's Day, he shall have that weekend per paragraph 2.5 above.

b.      If EDWARD's Summer time falls during Father's Day, he shall have an additional long weekend (Thursday to Monday ) with the children during the summer, notice to NATALIE by January 30th.

c.      If NATALIE elects to send any child to sleepover summer camp during her summer parenting time and that child is away for Father's Day (which is acceptable), EDWARD shall be allowed a make-up long weekend with that child upon 30 days' notice to NATALIE.

d.      NATALIE shall notice sleep away summer camp dates that may interfere with Father's Day immediately upon signup and no later than April 15th for an upcoming summer, or will otherwise be prohibited from scheduling over Father's Day.

2.7. Thanksgiving: EDWARD shall have the children on Thanksgiving, in even numbered years, from after school on the day in which school breaks for the holidays until the night before school begins after the holidays. In odd-numbered years, NATALIE shall have Thanksgiving from the day school ends before the holiday until school begins following the holiday. Edward's parenting time shall be exercised outside of Illinois.

2.8. Winter Break: The parties shall alternate Winter Break, such that EDWARD shall have the children for the first half of break in odd-numbered years and second half in even-numbered years, and NATALIE shall have the children for the first half of break in even-numbered years and second half in odd-numbered years. EDWARD's parenting time shall be exercised outside of Illinois.

2.9     Special Occasions: EDWARD shall be allowed to have the children for up to three family special occasion weekends per year, such as weddings, Bar/Bas Mitzvahs, one family reunion per year and funerals provided that 45 days' notice is provided of such special occasion weekends (except funerals for which notice must be provided upon learning of the event). The special occasion weekends do not include the children's Bar/Bas Mitzvahs which are specifically allocated to the respective parties. EDWARD shall only be allowed to take the children out of school for special occasions that are scheduled on a school day. Said family special occasion shall not conflict with NATALIE'S parenting time during Thanksgiving, Passover, Mother's Day, and the day of NATALIE'S birthday. In addition, upon the death of, or verified critical illness of, any direct family member of either EDWARD or NATALIE, the children will be made available for visitation and travel of up to 3 days with limited notice. NATALIE shall be allowed three special occasion weekends per year such as weddings, Bar/Bas Mitzvahs, one family reunion per year and funerals provided that they do not conflict with EDWARD'S parenting time during Thanksgiving, Passover, Father's Day, Spring Break, and the day of EDWARD'S birthday provided that 45 days' notice is provided of such special occasion

4

EXHIBIT_C 4/9                    WEINHAUS_v_COHEN_EXHIBITS 26/34

weekends (except funerals for which notice must be provided upon learning of the event).
NATALIE shall only be allowed to take the children out of school for special occasions that are
scheduled on a school day. To the extent that both parties have a special occasion occurring on
the same weekend, the party that first provides notice of the same shall have parenting time on
said weekend. The party must state the reason for the Special Weekend.

2.10: Paragraph 2.10 of the JCJ is amended to state that EDWARD shall bring
the children back to a Chicago transportation center which shall be limited to, Union Station,
Greyhound or similar bus station in downtown Chicago or airport (O'Hare or Midway) scheduled
on or before 8pm for his parenting time that end on a school night other than for tickets
purchased prior to the entry of this order. Should EDWARD drive the children, the drop-off will
be at the Dairy Queen in Highland Park on or before 8pm. On non-school nights, the scheduled
arrival time is no later than 8:40pm.    For weekday parenting time (2.11A) that is taking place
within the Chicagoland, IL area the parties shall exchange the children at the Dairy Queen in
Highland Park.

2.11: Subparagraph A of Paragraph 2.11 is amended to state that to the extent
EDWARD elects to have weekday parenting time with less than all five children, EDWARD's
seven day notice must specify which children EDWARD will be taking for parenting time on
which days.


4.  Paragraph 3.3 (a) of the JCJ is hereby amended to state that, if Josselyn Center is

covered by insurance that shall provide the children's therapist. Otherwise, NATALIE shall

provide Joel Levin with therapists covered by the children's insurance within seven (7) days,

and a therapist shall be selected by Joel Levin, if the parties cannot agreed to an alternative

therapist.  So.W, L.W and M.W. shall be in therapy. NATALIE shall schedule therapy, and take

the children as directed by the therapist as per the recommendations of the therapist. EDWARD

and NATALIE shall both have access to the therapist.  No significant change in the children's

schedule with therapy shall occur without the therapist speaking directly with both parents about

such change. NATALIE must email EDWARD of schedule changes. The therapy shall

discontinue if the therapist determines it is no longer necessary or beneficial for the child. If the

5

EXHIBIT_C 5/9                    WEINHAUS_v_COHEN_EXHIBITS 27/34

therapist determines that therapy is not effective with that therapist the therapist shall recommend that child's transition to a different therapist covered under the existing insurance coverage, the parties shall follow said recommendations. If the therapist does not make a referral after stating that therapy is not effective with that therapist but should still be continued generally, the parties shall rely upon Joel Levin to make a selection, in the absence of an agreement between the parties, for a new therapist covered by insurance. If the therapy appointment falls in EDWARD's weekday parenting time, he shall be required to take the children to said appointment. NATALIE shall not schedule therapy or reschedule therapy on days that EDWARD previously noticed to NATALIE for his weekday parenting time pursuant to Section 2.11A without EDWARD's consent. Each party shall pay 50% of the uncovered cost directly to the therapist after receipt of the therapist's invoice subsequent to the submittal to insurance.

    5. Article IV of the JCJ is hereby amended as follows:

        4.1. Paragraph 4.1 is amended to additional state that the parties shall add all school meetings and conferences to the Weinhaus Family Calendar within 24 hours of scheduling same. Both parties shall additionally be required to email to the other =within 24 hours of scheduling a conference, and notify the school that both parties are allowed to participate in the conference, via telephone, teleconference, or in person.

        4.2. Paragraph 4.2 is deleted and replaced with the following: On days that EDWARD does not have possession of the children, NATALIE shall open and set-up a FACETIME with Video call with EDWARD each night between 7:00 p.m. and 8:00pm for all children ages nine (9) and under.   This shall not, however, be the only allowable telephonic contact with the children. The children have a general right to contact both parties with the electronic devices. The imposition of discipline against one of the children may not be used to limit or cut-off FACETIME access at the prescribed time of 7:00pm. to 8:00pm. If either parent disciplines any of the children by taking their cell phone, that parent shall notify the other parent

EXHIBIT_C 6/9            WEINHAUS_v_COHEN_EXHIBITS 28/34

of the same via email and return the same to that child at the prescribed time of 7:00p.m. to 8.00p.m. for the purpose of communicating with EDWARD.

6. Neither party shall disparage the other via social media.

7. The parties shall cooperate to obtain passports for the children within the next thirty (30) days, and shall equally split the cost of the passports. NATALIE shall retain possession of the passports, and they shall be turned over to EDWARD within 7 days of his submittal of an international itinerary subject to 3.7a of the JCJ and returned to NATALIE with return of the children. A parent who loses the passports shall be responsible for the costs of replacement and both parents will accommodate same.

8. All medications prescribed to the children shall be sent with the children for all parenting time.

9. The parties may utilize third parties to perform drop-off/pickup, provided they give notice to the other party in advance.

10. The parties agree that the children should participate in extra-curricular activities. For the 2016 – 2017 school year, Natalie shall enroll the children in the following: Manny shall participate in football or basketball as he selects, Louie shall participate in basketball, Solomon shall participate in basketball or soccer as he selects, Ernie shall participate in Soccer, and Sadie shall participate in either one of dance or gymnastics, or as otherwise agreed to by the parties. For the following years, Natalie shall enroll each child in at least one activity per year not inclusive of summer time. Natalie shall select the activity and shall provide EDWARD notice of the same within 24 hours of registering the child for an activity. The parties are required to pay for one-half of the expense, up to $1,000.00 per child annually to activities for registration

7

EXHIBIT_C 7/9                    WEINHAUS_v_COHEN_EXHIBITS 29/34

fees and equipment required to participate in each such activity. Each party may pay half directly to the activities else, if NATALIE or EDWARD pays for the items, then reimbursements shall occur within 7 days' of valid proof of payment.  If EDWARD elects to apply for a scholarship for a summer camp or Maccabi games and needs specific information or documentation from NATALIE required for the scholarship application, NATALIE shall cooperate with EDWARD and provide to him the required information or documentation so that he can complete the application. Each parent shall be responsible for transporting the children to their scheduled activities on their parenting time. Neither parent shall have the right to transport children to an activity during the parenting time of the other parent unless specifically so agreed by the parties in advance.

     11.    All children shall have one Bar/Bas Mitzvah. EDWARD shall have L.W's and E.W's Bar Mitzvahs in St. Louis as a Special Weekend previously noticed (January 21, 2017 and February 24, 2024 respectively with the Friday beforehand off school to facilitate travel). NATALIE may have Sa,W's and So.W's Bas/Bar Mitzvahs in Chicago.  The party allocated that child shall sole discretion to plan that child's Bas/Bar Mitzvah, including sole discretion over the child's religious education in preparation for the same, and be solely responsible for the cost of same.  NATALIE shall ensure Bar Mitzvah lessons are attended by Louie and Ernie for up to 90 minutes per week for the 9 weeks leading up to their Bar Mitzvahs with EDWARD's Rabbi over videoconference. NATALIE may coordinate times with the Rabbi directly and must place the appointments on the WeinhausCalendar.  Both parents and grandparents, the children's aunts, uncles and first cousins are invited and welcome at all the children's Bar/Bas Mitzvahs, Bar Mitzvah parties. That all pending pleadings are hereby dismissed, with prejudice.

8

EXHIBIT_C 8/9

·Apr. 26. 2016   1:09PM                                        No. 3019——P.  10

12.   If there are any inconsistencies between the JCJ and this Agreed Order, the

terms of this Agreed Order shall supersede the terms of the JCJ.

13. This matter is set for status on therapy on May 2¼ 2016 at 9:30

Approved and agreed:

EDWARD WEINHAUS                          *Natalie Cohen*
                                         NATALIE COHEN

                                         ENTERED:        Judge Regina A. Scannicchio

                                                         APR 2·6 2016

                                                 Circuit Court—2059
                                         JUDGE            No.

Attorney Code: 39232
O'Connor Family Law, PC
Attorney For Petitioner
30 North LaSalle Street, Suite 2424
Chicago, IL 60602
(312) 621-0100

EXHIBIT_C 9/9          WEINHAUS_v_COHEN_EXHIBITS 31/34

EXHIBIT
G

# What Lappend

I felt left through the back door and jumped over the fence. I ran. I ran and took a left and found dad and I quickly went into the car. We drove to his hotel. The police were called on him. They were pretty pissed. So was Joel when we saw him at Max and Benny's.

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | |
|---|---|
| IN RE: THE MARRIAGE OF | ) |
| | ) |
| EDWARD A. WEINHAUS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| and | )  No.   12 D 008800 |
| | ) |
| NATALIE B. WEINHAUS, | ) |
| | ) |
| Respondent. | ) |

**RESPONSE TO MOTION FOR SANCTIONS AND OTHER RELIEF**

NOW COMES the Respondent, **NATALIE WEINHAUS** ("Natalie"), by and through her attorneys, HURST, ROBIN & KAY, and in support of her Response to Petitioner's Motion for Sanctions and Other Relief (the "Petition") respectfully states as follows:

**INTRODUCTION**

EDWARD and his Counsel have filed a highly unusual Motion seeking Rule 137 Sanctions against Natalie's counsel. Ostensibly, the Motion alleges Natalie's Three Count Petition for Rule to Show Cause for Indirect Civil Contempt and for Other Relief (the "Petition") was brought in bad faith and that Natalie's counsel failed to adequately investigate claims made by Natalie therein, thereby needlessly increasing the costs of litigation. As will be discussed in detail below, EDWARD's allegations are demonstrably false and Natalie has a well-plead and colorable complaint against EDWARD. What make the Motion unique is that rather than restricting the Motion to factual allegations in support of that claim, EDWARD's counsel devotes the majority of the allegations in an effort to denigrate Natalie's counsel, impugn his motives, which, even if those allegations were true, would not be a basis for Rule 137 Sanctions. The allegations in the Motion are

so demonstrably false that the only conclusion which can be drawn from the Motion is that its drafter is intentionally seeking to mislead this Court.

While this Court is well aware of some of the history of this case, such as EDWARD's efforts to drive Natalie towards an emotional breakdown at the inception of this case so that he could prevail on the issue of custody, and EDWARD writing messages on the pavement outside Natalie's home, there is significant other information of which this Court may not be aware. During at least a portion of the Post Decree litigation in this case, EDWARD was drafting his own pleadings, which were extremely lengthy. Those drafts were then forwarded to EDWARD'S counsel who signed and filed them as her own work product. When this information was brought to the Court's attention, the Court admonished EDWARD'S counsel against this practice as it could constitute aiding in the unlicensed practice of law, a breach of the Rules of Professional Conduct.

Further, this Court found it necessary to grant Natalie's Emergency Motion to Modify the Parenting Schedule based entirely upon EDWARD's abuses of numerous provisions. The litigiousness of this case has been almost completely driven by EDWARD. EDWARD has filed 25 Post Decree Motions, four or which are still pending compared to 10 filed by Natalie, four of which are still pending. Four of Natalie's Motions have been granted in whole or in part whereas EDWARD obtained relief on only two motions in whole or in part.

It is also important to note that there is a prior judicial finding that EDWARD "frequently edited his "evidence" in order to show extreme bias to his claim". *Supplemental Judgment p. 20.* Since water seeks its own level, EDWARD has found counsel who is also willing to "edit evidence" in order to show bias in her claim. As egregious as EDWARD's conduct was in attempting to perpetrate a fraud on the Court, the conduct of EDWARD'S counsel is far worse because she has a higher duty as an officer of the Court. EDWARD'S counsel manipulatively edited the Court Order in their Motion to give the reader the impression that Natalie had previously been sanctioned under